IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YASMIN FOOD MARKET, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOM VILSACK, Secretary, U.S. Department of Agriculture, | : | NO.  11-5184 |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                           January 24, 2012

      Defendant, Secretary of the U.S. Department of Agriculture ("Defendant"), has filed the present Motion to Dismiss Plaintiff Yasmin Food Market's ("Plaintiff") Amended Complaint. For the following reasons, the Motion is granted in part and denied in part.

**I.      FACTUAL AND PROCEDURAL HISTORY**

      According to the facts set forth in the Amended Complaint,[1] Plaintiff, as part of its business as a food retailer, was a participant in the Special Supplemental Nutrition Program for Women, Infants, and Children, 42 U.S.C. § 1786 ("WIC") and the Supplemental Nutrition Assistance Program, 7 U.S.C. § 2011, et seq. ("SNAP").  (Am. Compl. ¶ 6.)  On September 1, 2010, November 9, 2010, and March 11, 2011, the Pennsylvania Department of Health, which administers WIC, subjected Plaintiff to four separate "compliance buys"[2] and concluded that

---

      [1] In the Amended Complaint, Plaintiff references, but has not attached, exhibits that were included with the original Complaint.  Therefore, when discussing Plaintiff's exhibits, the Court refers to those attached to the original Complaint.

      [2] Two of the compliance purchases were conducted on November 9, 2010.  (Compl., Ex. A.)

Plaintiff had violated the program's rules and regulations. (Id. ¶ 7.)[3] Plaintiff was not informed of these violations until after all four compliance buys had occurred. (Id. ¶ 10.) As a result of the alleged violations, Plaintiff was disqualified from WIC on July 6, 2011 and from SNAP on August 1, 2011, and is prohibited from participating in these programs for a period of three years. (Id. ¶¶ 13, 15.)

On August 16, 2011, Plaintiff filed in this Court a Complaint, a Motion for Preliminary Injunction, and a Motion for Temporary Restraining Order. The Court denied the Motion for Temporary Restraining Order on August 16, 2011. On October 5, 2011, the Court also denied the Motion for Preliminary Injunction, albeit without prejudice, so as to allow Plaintiff the opportunity to amend its Complaint.

The Amended Complaint, filed on November 3, 2011, alleges the following: (1) Defendant deprived Plaintiff of a property interest without due process of law by disqualifying it from WIC and SNAP (Count I); (2) Defendant violated Plaintiff's due process rights by failing to notify it of the WIC violations until after all four compliance buys were complete (Count II); and (3) the penalties imposed by Defendant are disproportionate to Plaintiff's WIC violations and therefore constitute cruel and unusual punishment (Count III). (Am. Compl. ¶¶ 20-25.) Plaintiff requests an injunction that would compel Defendant to reinstate it as a participant in WIC and SNAP. (Id. ¶ 1.) On November 17, 2011, Defendant filed its Motion to Dismiss, and Plaintiff filed a Response in Opposition on November 30, 2011.

---

[3] Specifically, Plaintiff was found to have charged more than the authorized shelf price for some items, secured a customer's signature before completing the "pay exactly" box, sold items which were not authorized by WIC, and failed to place the price of some items in a visible location. (Id. ¶ 8.)

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the

fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III.  DISCUSSION

SNAP, originally known as the Food Stamp Act, was enacted in 1964 to assist low-income households in obtaining "a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation."  7 U.S.C. § 2011.  WIC was established in 1972 to provide "supplemental foods and nutrition education" to pregnant, postpartum, and breastfeeding women, as well as children from families with inadequate income.  42 U.S.C. § 1786(a).  These programs are administered by Defendant's Food and Nutrition Service through state-level agencies.  7 C.F.R. §§ 246.3, 271.3, & 271.4.

> In Pennsylvania, it is the responsibility of the Commonwealth's Department of Health to
>
> > develop policies and procedures for the operation of the WIC Program, distribute funds to local agencies to assist the Department in operating the WIC Program, authorize stores to participate in the WIC Program, monitor and evaluate WIC

>Program services provided by WIC authorized stores, maintain fiscal records, submit reports and carry out all other responsibilities delegated to it by the USDA-FNS for the operation of the WIC Program.

28 Pa. Code § 1101.3(a). Pursuant to 28 Pa. Code § 1107.1, the Department of Health may sanction a WIC-participating store for violations of the program's terms and conditions. Sanctions can range from a civil money penalty to permanent disqualification from the program. 28 Pa. Code §§ 1107.1-1107.2. If, during an inspection by the Department of Health, a store is found to have committed multiple violations, it may be disqualified from the program "for the period corresponding to the most serious violation." 28 Pa. Code § 1107.1a(g). Once the decision is made to disqualify a WIC participant, the store is given notice of the adverse action and may file an administrative appeal within thirty days from the date the notice is mailed. 28 Pa. Code § 1113.2. Disqualification from WIC may result in reciprocal disqualification from SNAP, which is not subject to administrative or judicial review. 7 C.F.R. § 278.6(e)(8)(iii).

In this case, the Pennsylvania Department of Health investigated Plaintiff on four separate occasions between September 2010 and March 2011 to ensure that it was in compliance with the terms and conditions of WIC participation. (Compl., Ex. A.) According to a letter sent by the Department of Health to Plaintiff on May 2, 2011, these investigations revealed that Plaintiff had violated 28 Pa. Code §§ 1105.3(a)(14), 1105.3(b)(1), 1105.3(b)(3), 1105.3(c)(6), 1105.3(c)(7), and 1105.3(c)(15). (Id.) As a result, Plaintiff was disqualified from WIC and required to reimburse the Department of Health for $18.35 worth of overcharges. (Id.) The May 2, 2011 letter also informed Plaintiff that it had until June 1, 2011 to appeal the decision, and that the WIC violations may result in disqualification from SNAP as well. (Id.) Plaintiff did not appeal

the disqualification by June 1, 2011.  On June 23, 2011, however, Plaintiff paid $15.70[4] and asked the Department of Health to reconsider its decision to disqualify it from WIC.  (Id., Ex. B.)  Nevertheless, Plaintiff was completely removed from WIC on July 6, 2011 and from SNAP on August 1, 2011.  (Am. Compl. ¶ 13.)

In its Amended Complaint, Plaintiff does not deny committing the WIC violations alleged by the Department of Health.  Rather, it contends that the disqualifications from both WIC and SNAP deprived it of a property interest without due process of law, that its due process rights were violated by virtue of the fact that the Department of Health did not notify it of the violations until after the fourth investigation, and that the disqualifications constitute cruel and unusual punishment.  Defendant has moved for summary judgment on all of Plaintiff's claims, and the Court considers each in turn.

    A.    **Plaintiff's Due Process Claims**[5]

Pursuant to the Fifth Amendment, procedural due process "requires a party be given notice and an opportunity to be heard prior to the seizure of his or her property by the government."  Gary v. N.J. Dep't of Consumer Affairs Office of Consumer Prot., No. Civ.A.10-

---

[4] It is not clear why Plaintiff did not pay the full $18.35 referenced in the May 2, 2011 letter.

[5] Plaintiff's first claim alleges that "Defendant's actions deprived Plaintiff of a Property Interest, i.e., his ability to accept WIC and SNAP benefits, without due process of law."  (Am. Compl. ¶ 21.)  The second claim alleges that "[t]he compliance buys, as performed and enforce[d], violated Plaintiff's rights to notice (due process) when he was not informed of his violations and not given an[] opportunity to correct said violations until Defendant had performed four compliance buys during a period of seven months."  (Id. ¶ 23.)  The Court is unable to discern how these two claims differ.  The first claim alleges that Defendant's actions violated Plaintiff's due process rights, and the second claim specifies what those actions were.  Moreover, in its Motion to Dismiss, Defendant does not clearly distinguish between the two causes of action.  Accordingly, the Court analyzes the two due process claims concurrently.

3686, 2011 WL 4467781, at *4 (E.D. Pa. Sept. 22, 2011) (citing Zappan v. Pa. Bd. of Prob. & Parole, 152 F. App'x 211, 220 (3d Cir. 2005)).[6]

Plaintiff's first claim alleges that Defendant deprived it of a property interest without due process of law by disqualifying it from WIC and SNAP.  With respect to WIC, Defendant contends that Plaintiff is barred from challenging its disqualification because it failed to seek administrative review of the Department of Health's decision.  (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 7-8.)  Had Plaintiff exhausted its administrative remedies, it would have then been permitted, pursuant to 7 C.F.R. § 246.18(f) and 28 Pa. Code § 1113.5, to pursue judicial review in state court.  (Id.)  According to Defendant, Plaintiff cannot sustain a claim for deprivation of his due process rights after he failed to pursue the procedural remedies that were available to him.  (Id. at 9.)  Furthermore, when a store is disqualified from SNAP based on a prior disqualification from WIC, that decision is not subject to administrative or judicial review.  (Id. at 7 (citing 7 U.S.C. § 2021(g)(2)(C); 7 C.F.R. § 278.6(e)(8)(iii)(C)).)  As such, Defendant contends that this Court lacks subject matter jurisdiction to hear Plaintiff's challenge to its SNAP disqualification.  (Id. at 1-2, 7.)

Plaintiff admits that it was informed of its right to appeal the WIC disqualification and that it failed to avail itself of this administrative remedy.  (Pl.'s Resp. Opp'n 3.)  As such, if Plaintiff had merely alleged that it did not receive notice and an opportunity to be heard, its due process claims would undoubtedly fail.  Count II of the Amended Complaint, however, alleges

---

[6] Neither the Amended Complaint nor Plaintiff's Response in Opposition specify the constitutional amendment upon which the due process claims are based, or whether substantive or procedural due process is at issue.  Because Plaintiff is bringing its claims against a federal agency for alleged procedural deficiencies—specifically inadequate notice—the Court treats them as procedural due process claims made pursuant to the Fifth Amendment.

that the harm suffered by Plaintiff stems from the fact that it was not notified of the WIC violations until after the fourth compliance investigation occurred.  (Am. Comp. ¶ 23.)  As such, the due process claims relate to *when* Plaintiff received notice, not *whether* it was notified.  According to Plaintiff, "[t]he regulations do not require the administrative agency to inform plaintiff after the first violation.  The problem is how the law is implemented.  The administrative agency simply keeps conducting undercover purchases and accumulating violations, which will, at the end of the process, require a three-year suspension."  (Pl.'s Resp. Opp'n 4.)  In other words, Plaintiff appears to be arguing that had it been notified of its WIC violations after the first compliance buy, it could have corrected its errors, prevented future infractions, and received a less severe sanction than the three-year period of disqualification.

      Defendant contends that Plaintiff could have raised any complaints about its disqualification—or the process leading up to it—at the administrative hearing.  (Def.'s Mem. 8-9.)  In support of this argument, it cites to Dasmesh Enterprises, Inc. v. United States, 501 F. Supp. 2d 1033 (W.D. Mich. 2007), which also concerned a vendor that had been disqualified from WIC and SNAP.  (Def.'s Mem. 7-9.)  In Dasmesh, the court found that it lacked subject matter jurisdiction to review the defendant's decision to disqualify the plaintiff, and dismissed the case.  501 F. Supp. 2d at 1041.

      While Dasmesh is factually similar to the current matter, the plaintiff in that case claimed that the state agency failed to properly apply the government's own regulations in issuing its sanctions, and did not raise any constitutional challenges to the manner in which a store is notified of compliance investigations.  501 F. Supp. 2d at 1038.  In this regard, the present case is

distinguishable.[7] Here, the Court is not simply being called upon to review the decision to disqualify Plaintiff, but to determine whether the procedure which culminated in the disqualification comported with due process. Therefore, the relevant question is whether a constitutional claim—as opposed to a substantive challenge to the disqualification itself—is barred by Plaintiff's failure to exhaust its administrative remedies.

In other contexts, the Court of Appeals for the Third Circuit has held that "the exhaustion of administrative remedies is not always required when the petitioner advances a due process claim." Sewak v. Immigration & Naturalization Serv., 900 F.2d 667, 670 (3d Cir. 1990); see also Patel v. Ashcroft, 123 F. App'x 72, 78 n.5 (3d Cir. 2005) ("[A]dministrative exhaustion is not always necessary when a constitutional claim is involved.").[8] The Third Circuit has also held, however, that when the "due process argument is tantamount to a procedural error correctable through the administrative process, the narrow constitutional exception to exhaustion is not applicable." Patel, 123 F. App'x at 78 n.5.

Here, the Court is unable to conclude that Plaintiff has alleged a mere "procedural error"

---

[7] The Court also finds little guidance in another case cited by Defendant, Simone Enterprises, LLC v. U.S. Department of Agriculture, No. Civ.A.11-301, 2011 WL 3236222 (E.D. Wis. July 27, 2011). While that case did include a constitutional claim, the plaintiff limited the cause of action to its SNAP disqualification, arguing that its due process rights were violated by virtue of the fact that two sections of the federal regulations contradicted each other. Simone, 2011 WL 3236222, at *1. The plaintiff did not challenge the sufficiency of the notice provided in conjunction with the WIC compliance investigations that led to its SNAP disqualification.

[8] These rulings from the Third Circuit addressed the exhaustion requirements as they applied to decisions made by the Board of Immigration Appeals, and the Court recognizes that they are not directly on point with respect to this case, which involves the Department of Agriculture. Nevertheless, because the Court is unable to find any authority that discusses a constitutional challenge to the WIC and SNAP disqualification process brought by a party that failed to exhaust administrative remedies, it looks to these Third Circuit decisions for guidance in resolving this issue.

that could have been corrected at an administrative hearing.  Such a claim would be akin to that of the plaintiff in Dasmesh, who argued that the defendant misapplied the existing regulations.  In this case, Plaintiff has alleged that there is a fundamental, unconstitutional flaw in the regulations themselves, which allowed the Department of Health to record multiple violations—and thereby impose a more severe penalty—before giving Plaintiff notice of its first violation.  At this stage of the litigation, it is unclear whether or not the regulations actually deprived Plaintiff of adequate procedural protections, because neither party has satisfactorily discussed the relevant regulations that governed the disqualification process.[9]

In sum, Plaintiff's allegation that Defendant violated its due process rights by failing to provide notice after the first compliance investigation—when Plaintiff could have corrected its errors and avoided the three-year disqualification—is sufficient to state a claim.  Because the due

---

[9] For example, Defendant cites to 7 C.F.R. § 246.12 for the proposition that a "State agency 'does not have to provide the vendor with prior warning that violations were occurring before imposing' sanctions." (Def.'s Mem. 8 (citing 7 C.F.R. § 246.12(l)(3)).)  That regulation, however, was amended in March 2009—well over a year before the Department of Health conducted its first investigation—to read as follows:

> The State agency must notify a vendor in writing when an investigation reveals an initial incidence of a violation for which a pattern of incidences must be established in order to impose a sanction, before another such incidence is documented, unless the State agency determines, in its discretion, on a case-by-case basis, that notifying the vendor would compromise an investigation.  This notification requirement applies to the violations set forth in paragraphs (l)(1)(iii)(C) through (l)(1)(iii)(F), (l)(1)(iv), and (l)(2)(i) of this section.

7 C.F.R. § 246.12(l)(3).  While the prior rule apparently allowed the state agency to record multiple violations before notifying a participating store, the current regulation now seems to require the agency to inform the store after the first violation, unless notification would compromise an investigation.  Without a clear understanding of how the applicable rules actually operate and were applied to Plaintiff, the Court cannot determine whether the notice provided by the Department of Health offered Plaintiff a meaningful opportunity to redress its grievance.

process claims are constitutional, they provide the Court with subject matter jurisdiction to hear the case and are not automatically barred by Plaintiff's failure to exhaust its administrative remedies. Accordingly, Defendant's Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint is denied.

### B. Plaintiff's Cruel and Unusual Punishment Claim

Plaintiff alleges that the decision to disqualify it from WIC and SNAP constitutes cruel and unusual punishment. (Am. Compl. ¶¶ 24-25.) Defendant moves to dismiss this claim, arguing that the Eighth Amendment usually applies in the context of criminal, not civil, process, and that other courts have upheld the same penalties to which Plaintiff was subjected. (Def.'s Mem. 9 n.5 (citing Dasmesh, 501 F. Supp. 2d at 1036).) In its Response in Opposition, Plaintiff does not address Defendant's challenge to its cruel and unusual punishment claim.

The Court is unable to identify any authority to support the proposition that disqualification from a government program—as a consequence of violating the terms of that program—constitutes cruel and unusual punishment. Even if Plaintiff was deprived of its due process rights during the disqualification process, it has not alleged how this rises to the level of an Eighth Amendment violation. Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint is therefore granted.[10]

## IV.  CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has stated a claim pursuant

---

[10] As a final matter, Defendant argues that any request for preliminary injunctive relief must be denied. (Def.'s Mem. 11.) Because Plaintiff has not formally moved for a preliminary injunction, no such relief will be granted and the Court need not address the merits of Defendant's argument.

to the Fifth Amendment for violation of its due process rights.  Therefore, the Court has subject matter jurisdiction to hear this case and Plaintiff's cause of action is not barred by its failure to exhaust administrative remedies.  Defendant's Motion to Dismiss Counts I and II of the Amended Complaint is denied.  With respect to its Eighth Amendment claim, however, Plaintiff has failed to identify how disqualification from a government program constitutes cruel and unusual punishment.  Defendant's Motion to Dismiss Count III of the Amended Complaint is accordingly granted.

      An appropriate Order follows.